FREEMAN v. STATE.

Opinion delivered January 29, 1923.

1.   LARCENY—DESCRIPTION OF PROPERTY.—It is essential in an indictment for larceny to identify the property alleged to have been stolen by apt words of description, but the description may be in general terms if sufficient to apprise the accused of the property he is alleged to have taken.

2. LARCENY—DESCRIPTION OF PROPERTY.—In an indictment for larceny, it was sufficient to describe the property stolen as "500 pounds of cotton," without specifying whether it was seed or baled cotton.

3. CRIMINAL LAW—MOTION FOR CONTINUANCE PROPERLY OVERRULED WHEN.—A motion for continuance for absent witnesses was properly overruled where there was no showing of diligence to secure their attendance, and no proof that they are within the court's jurisdiction so that their attendance could be obtained at a later date.

4. LARCENY—SUFFICIENCY OF EVIDENCE.—In a prosecution for the larceny of cotton evidence *held* sufficient to sustain conviction.

5. CRIMINAL LAW—INSTRUCTION AS TO POSSESSION OF STOLEN PROPERTY.—In a prosecution for larceny, an instruction that the jury might consider the fact of the possession of recently stolen property in determining whether or not the evidence was sufficient to establish the guilt of defendant beyond a reasonable doubt was not erroneous as being on the weight of the evidence.

6. CRIMINAL LAW—READING STATUTE TO JURY.—It was not error for the court to read to the jury, in response to á question by one of the jurors as to whether or not accused could be sent to the reform school, the section providing for sending felons convicted while under the age of 18 years to the reform school.

Appeal from Sebastian Circuit Court, Fort Smith District; *John Brizzolara,* Judge; affirmed.

*J. E. London* and *John London,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

McCULLOCH, C. J. Appellant was tried and convicted under an indictment charging the offense of grand larceny by stealing, taking and carrying away "five hundred pounds of cotton of the value of $100, the property of H. A. Meadows."

There was a demurrer to the indictment on the ground that the property alleged to have been stolen was not sufficiently described, in that it was not stated whether the property was seed cotton or lint cotton.

Counsel for appellant rely mainly on the decision of this court in *Houston* v. *State,* 66 Ark. 120, where it was held that under an indictment charging the theft of seed cotton it constituted a variance to prove the theft of lint

cotton. The court did not hold that it was necessary to specify the particular kind of cotton, nor are we aware of any decision of this court which holds to that degree of particularity in an indictment for larceny. It is essential in an indictment for larceny to identify the property alleged to have been stolen by apt words of description, but the description may be in general terms if sufficient to apprise the accused of the property he is alleged to have taken. *State* v. *Gooch,* 60 Ark. 218; *State* v. *Haller,* 119 Ark. 503.

Our statute provides that an indictment must contain a statement of the acts constituting the offense "in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended." Crawford & Moses' Digest, § 3028. And it is also provided that an indictment is sufficient if the "act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment on conviction, according to the right of the case." Crawford & Moses' Digest, § 3013.

The use of the word "cotton" constitutes a general description of the property indicated, in whatever state it exists, after it is gathered and before it is manufactured into some article of merchandise, whether the seed have been removed at the gin or whether it is still in the seed. The trial court was correct therefore in overruling the demurrer.

It is next insisted that the court erred in refusing to grant a continuance on appellant's application. The basis of this assignment of error is that the court overruled the motion because it was in conflict with a rule of the court requiring motions for continuance to be filed a day in advance of the trial, but it is shown by the recitals in the bill of exceptions that this was not the ground of the court's ruling, and that, on the contrary, the court permitted the motion to be filed and considered it, but overruled it on the ground of its insufficiency. The names of the witnesses were set forth in the motion, and the sub-

stance of the testimony which it is claimed they would have given, but there is no showing in the motion as to where the witnesses were or that their attendance could have been procured at a later date or term of the court. There was a general allegation in the motion that the attendance of the witnesses could be procured and that subpoenas had been issued for them, but there was not a definite statement of facts to show where the witnesses were, nor when the subpoenas were issued. The court was justified therefore in overruling the motion on the ground that there had been no definite showing of diligence, or that the witnesses were in the jurisdiction of the court and that their attendance could be obtained at a later date. *Hayes* v. *State,* 142 Ark. 587.

The next assignment of error relates to the alleged insufficiency of the evidence in failing to show that the defendant stole any cotton or to identify the cotton taken as that of Meadows.

The testimony adduced by the State tended to show that seed-cotton, the property of Meadows, was stolen from a wagon standing in the latter's field before daylight on the morning of September 23, 1922, and the circumstances tended to show that appellant was the person, or one of the persons, who committed the theft.

Meadows testified that he left his wagon, loaded with cotton, in the field on the night in question, and that on the next morning the cotton had been removed from the wagon. He traced the route taken by the thief from the wagon to the public road, a few hundred yards distant, through the field, by footprints, also by cotton dropped on the ground. There were indications of a motor truck having stood in the road at the place to which the cotton was taken. Witnesses testified that they could see where the hind wheels of a truck stood, and also the footprints of persons in front where the engine was cranked up on restarting. About seven o'clock that morning appellant carried a load of seed-cotton in a truck to a gin in the locality, and sold it, and received a

check in a fictitious name, that of "Bill Smith." The person in charge of the gin testified that he identified the defendant as being the man who sold him the cotton, and that he was directed to make out the check in the name of "Bill Smith." He testified that appellant appeared to be tired and sleepy, and stated to him at the time that he had gotten up very early that morning, and was cold. The ginner stopped the payment of the check at the bank before it could be collected, and when appellant appeared at the bank to collect the check, payment was refused, and he was immediately arrested.

Appellant made contradictory statements to the officers about the check, first stating that he had left it at the bank, and later stating that he had torn it up, but the check was afterwards found in his possession, and it was exhibited at the trial and shown to have been drawn payable to "Bill Smith."

There were peculiar marks about the shoes which made the tracks between the wagon and the public road, and appellant's shoes were fitted into the tracks and found to bear the same peculiar marks.

The ginner observed that the windshield on the truck driven by appellant, when he brought the cotton to the gin, was broken on the left side, and it was shown that there was the same defect in a truck at the home where appellant lived.

All these circumstances were sufficient to show that appellant stole the cotton which he sold to the ginner, and that it was the property of Meadows. The trail of the cotton and the tracks of the thief were followed from the field to the truck, and the truck was then followed by the tracks thence to the gin where the cotton was sold by appellant.

Conceding, as contended by appellant, that there was a discrepancy between the different statements of Meadows as to the quantity of cotton in his wagon, this discrepancy related only to the weight of the testimony of the witness which has been accredited by the jury.

The jury may have found from the evidence that a larger quantity of cotton was stolen than that described in the indictment, and that other cotton was stolen from another person at the same time, but the circumstances warrant the inference of the fact that appellant stole five hundred pounds of cotton from Meadows, as charged in the indictment.

It is contended that the court erred in charging the jury upon the weight of the evidence in its instruction in regard to the circumstance of possession of recently stolen property. This instruction was not on the weight of the evidence, but merely stated that the jury might consider the fact in determining whether or not the evidence was sufficient to establish the guilt of defendant beyond a reasonable doubt. *Pearrow* v. *State,* 146 Ark. 182.

The bill of exceptions contained a recital that, after the argument of counsel had been concluded and immediately before the retirement of the jury to consider of their verdict, one of the jurors asked the court whether or not the defendant would be sent to the reform school, whereupon the court stated: "Gentlemen of the jury, since you ask that question, and without at this time saying what will be done with the defendant, it is proper for the court to read this section of the law." The court then read the section of the statute which provides, in substance, for sending female felony convicts and felony convicts under the age of eighteen years to the reform school. It is insisted that the court erred in giving this instruction to the jury.

We have never held that it is error for a trial court to inform the jury of the substance of the statute referred to above, or to read the statute to the jury. On the contrary, the court held, in *Pittman* v. *State,* 84 Ark. 292, that it was not error to so inform the jury, unless it was done in a way to indicate the court's views as to the guilt or innocence of the defendant. It was held in the case cited and in later decisions that it is error to give incorrect information to the jury as to the substance and effect of

this statute. It will be observed from the recitals in the bill·of exceptions in the present case that the court did not volunteer the information on this subject at all, but merely read the statute to the jury when so requested, and read it correctly. We think there was no error committed by the court in this respect.

Judgment affirmed.